# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| PERSONIFIED, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 08 CV 3123** |
| | ) | |
| v. | ) | **Hon. Samuel Der-Yeghiayan** |
| | ) | **Magistrate Judge Michael T. Mason** |
| SALES CONSULTANTS OF CARY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PERSONIFIED, LLC'S MEMORANDUM IN OPPOSITION TO SALES CONSULTANT OF CARY, LLC'S MOTION TO DISMISS

Personified, LLC ("Personified"), a wholly owned subsidiary of CareerBuilder, LLC ("CareerBuilder"), has used the PERSONIFIED trademark since March of 2008 to consult with companies regarding their employee management strategies. On May 21, 2008, counsel for Sales Consultants of Cary, LLC ("SCC"), an executive search company based in Cary, North Carolina, sent a letter to counsel for CareerBuilder making a series of aggressive demands concerning Personified's use of the PERSONIFIED trademark. In particular, SCC demanded, *inter alia*, that CareerBuilder pay $100,000 in supposed "damages" and transfer the "personified.com" domain name to SCC. SCC claimed that Personified should pay these damages and transfer the domain name because CareerBuilder's use of the PERSONIFIED mark infringed SCC's purported common law right in the trademark PERSONIFY and otherwise constituted unfair competition under state law. Tellingly, SCC does not reference its monetary demand in its motion to dismiss or attach its counsel's letter making that demand to its motion.

Upon receiving this letter, Personified concluded that it had not infringed SCC's rights or committed any acts of unfair competition, that it would not do so in the future and that any

further discussion with SCC would be futile given the tenor of the letter sent by SCC's counsel.

Because Personified only recently began using the PERSONIFIED trademark, it decided to seek

prompt adjudication of the matters raised by SCC's counsel with an appropriate Court as soon as

possible. To obtain such an adjudication, Personified filed a complaint for declaratory relief with

this Court on May 30, 2008 (the "Illinois Action"). With its complaint, Personified sought a

declaration that: (1) it had not violated any law by using the PERSONIFIED mark; (2) it would

not violate any law by using that mark in the future; and (3) it would not need to pay SCC any

amount or transfer its domain name as a result of its use of the PERSONIFIED mark.

On June 5, 2008 (six days after Personified initiated the Illinois Action), SCC filed an

action against CareerBuilder and Personified in the United States District Court for the Eastern

District of North Carolina (the "North Carolina Action"). CareerBuilder and Personified have

now moved to dismiss the North Carolina Action under the first-to-file rule – which is followed

in the Fourth Circuit – because Personified already filed this declaratory relief action in Illinois.

*See Volvo Constr. Equip. North America, Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 594-95

(4th Cir. 2004) (recognizing priority given to first-filed actions). CareerBuilder and Personified

have also filed a motion, in the alternative, to transfer the North Carolina Action to the United

States District Court for the Northern District of Illinois because this venue presents a more

appropriate forum for the adjudication of the claims asserted there. The convenience of the

Illinois venue arises from the following facts: (1) Personified, the party responsible for the

allegedly infringing conduct and supposed acts of unfair competition, is based in Illinois; (2) all

of Personified's relevant employees and practically all of the relevant documents are located in

Illinois; (3) the bulk of the acts complained of have occurred in or have been directed from

Illinois; (4) Personified and CareerBuilder have not used the PERSONIFIED mark in any

significant way in the Eastern District of North Carolina; and (5) the lead counsel for the parties in both actions are based in Chicago, Illinois. Numerous cases have transferred trademark infringement cases just like this one. *See, e.g., Premier Herbs, Inc. v. Nature's Way Prods., Inc.,* 689 F. Supp. 180, 186 (S.D.N.Y. 1988); *International Comfort Prods., Inc. v. Hanover House Indus., Inc.,* 739 F. Supp. 503, 506 (D. Ariz. 1989); *H.B. Sherman Mfg. Co. v. Rain Bird Nat. Sales Corp.*, 979 F. Supp. 627, 632 (N.D. Ill. 1997).

SCC has now moved this Court to dismiss the Illinois Action on the grounds that Personified's filing of the complaint in Illinois is nothing more than an "improper exercise in forum shopping meant to preempt the complaint filed by [SCC]" in North Carolina. *See* SCC Mot. to Dismiss at 1. This Court should deny SCC's motion because the action was not filed in an effort to forum shop or to preempt the complaint filed by SCC. Rather, it was a legitimate effort by Personified to obtain a prompt declaration of its rights in the most appropriate forum for this matter. In the event that the Court does not agree and wishes to exercise its discretion to decline jurisdiction of Personified's declaratory judgment action, the Court should at least stay the dismissal of this action until such time as the North Carolina district court rules on Personified's motion to transfer the North Carolina Action to this Court. The Court should stay such dismissal because, in the event of such transfer, the two cases can be consolidated and adjudicated more quickly and efficiently in Illinois if this matter is still pending here.

## **BACKGROUND FACTS**

On December 19, 2007, CareerBuilder filed an intent-to-use trademark application for the mark PERSONIFIED with the United States Patent and Trademark Office covering certain employment management consulting services. *See* Compl. at ¶ 5. On March 24, 2008, RightFish, LLC, a wholly owned subsidiary of CareerBuilder changed its name to "Personified,

LLC." *See id.* at ¶ 6.  As of April 1, 2008, CareerBuilder assigned all rights to the mark

PERSONIFIED, including its application to register that mark, to its wholly-owned subsidiary

Personified together with the business therewith.  *See id.*  Since this time, Personified has been

the exclusive user of the PERSONIFIED trademark.  *See* Declaration of Mary Delaney

("Delaney Decl.") at ¶ 4 (attached hereto as Ex. 1).  As a result of this use, consumers of

Personified's services have come to associate the PERSONIFIED mark exclusively with

Personified.  *See id.* at ¶ 5.

      Personified's office is located in Chicago, Illinois.  *See id.* at ¶ 6.  Thirty-seven of the

forty-seven Personified employees work in that office.  *See id.*  Personified's other ten

employees work from their respective homes in various locations around the country, although

they report to supervisors in Chicago and work directly with Personified's Chicago office when

conducting their routine business activities.  *See id.* at ¶ 7.  Practically all of Personified's

documents, electronic and otherwise, relevant to its use of the PERSONIFIED mark are located

in Chicago, Illinois.  *See id.* at ¶ 8.  While Personified conducts operations in various areas of the

country, it has not conducted any significant business activity in North Carolina, and specifically,

the area of the state included within the Eastern District of North Carolina.  *See id.* at ¶ 9.

Similarly, CareerBuilder did not conduct any significant business activity using the

PERSONIFIED mark in North Carolina or in the Eastern District of North Carolina before

assigning its mark to Personified and, since that time, CareerBuilder has not used the mark

anywhere.  *See id.* at ¶¶ 4, 10.

      On May 21, 2008, counsel for SCC sent counsel for CareerBuilder a letter demanding,

*inter alia*, that CareerBuilder: (1) immediately remove, destroy and cease using all signs,

websites, and advertising materials displaying the PERSONIFIED mark; (2) withdraw its

trademark application for the PERSONIFIED mark; (3) assign to SCC for no additional consideration the "personified.com" domain name; (4) acknowledge in writing SCC's rights to the PERSONIFY and PERSONIFIED mark (even though SCC has not alleged or shown that it has ever used the PERSONIFIED mark); (5) irrevocably covenant not to contest or oppose the PERSONIFY and PERSONIFIED marks in the future; and (6) pay SCC $100,000 in supposed damages. *See* 5/21/2008 Corresp. fr. R. Taylor to M. Walch (attached hereto as Ex. 2). In that letter, counsel for SCC also stated that "[a]ny…out-of-court resolution will depend on execution of a definitive agreement satisfactory in form and content to our client." *Id.* This letter made no offer for compromise, but rather insisted that CareerBuilder acquiesce to the purportedly "fair" terms of SCC's letter or face an uncertain future clouded by unreasonable threats. *See id.*

In response to this letter and the various demands set forth therein, Personified, the user of the mark in question, filed a declaratory judgment action in the United States District Court for the Northern District of Illinois on May 30, 2008. Through the filing of such a complaint, Personified sought to quickly and efficiently address the exorbitant demands of SCC – demands with which Personified had no intention of complying given its view of its rights. Personified sent a courtesy copy of the Illinois Action Complaint to SCC's counsel on the night of May 30, 2008. It then served SCC with the Illinois Action Complaint on June 2, 2008.

In an apparent effort to avoid the prompt adjudication of the Illinois Action by the Illinois federal court, SCC filed its own complaint alleging trademark infringement and unfair competition in the United States District Court for the Eastern District of North Carolina on June 6, 2008. It then filed a motion to dismiss the Illinois Action on June 12, 2008, through its Chicago counsel, Winston & Strawn, LLP. SCC's North Carolina counsel has since identified Winston & Strawn as its primary counsel in both the Illinois and North Carolina Actions. Both

parties acknowledge that SCC asserts the very same claims in the North Carolina Action for which Personified seeks declaratory relief in its favor in the Illinois Action.

## **ARGUMENT**

Before addressing the issue raised by SCC's motion, Personified notes that SCC spends a portion of its motion to dismiss arguing the merits of the underlying case. *See* SCC Mot. to Dismiss at 1-3. Because the merits of the case are irrelevant to the ruling on SCC's motion to dismiss, Personified will not address them in detail here. However, Personified intends to ultimately prove that: (1) SCC does not have common law rights in the PERSONIFY mark; and (2) even if it did, Personified's use of the PERSONIFIED mark will not cause a likelihood of confusion among the parties' respective consumers due in part to the sophistication of those consumers and the many companies already using the PERSONIFY trademark.

## I.    THE COURT SHOULD EXERCISE ITS DISCRETION TO RETAIN JURISDICTION OVER PERSONIFIED'S DECLARATORY RELIEF REQUEST.

The Federal Declaratory Judgment Act provides that "[i]n case of actual controversy…any court of the United States, upon the filing of an appropriate pleading may declare the rights and other legal relations of any interested party seeking declaration." 28 U.S.C. § 2201(a). Notwithstanding a party's right to file for a declaratory judgment, federal courts have the discretion to decline to hear a declaratory judgment action even though it is within their jurisdiction. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942). SCC claims that the Court should exercise that discretion here because SCC subsequently filed its own trademark infringement action in North Carolina and Personified allegedly engaged in an "impermissible exercise in forum shopping" SCC Mot. to Dismiss at 2. As explained herein, Personified did not engage in impermissible forum shopping. Rather, it sought the prompt adjudication of its rights in the face of SCC's exorbitant "take it or leave it" settlement demand.

SCC's claim thus reduces to a contention that Personified is forum shopping because it filed the declaratory judgment action in a jurisdiction other than the one SCC would have chosen.

### A.    SCC's Suit Does Not Constitute Impermissible Forum Shopping.

Because the federal law for trademark infringement is not materially different from jurisdiction to jurisdiction and the state unfair competition laws generally raise the same issues, there is no substantive difference in the law that will apply to the two cases initiated by the parties. *See Inwood Labs., Inc. v. Ives Labs.,Inc.* 456 U.S. 844 (1982) ("the purpose of the Lanham Act was to codify and unify the common law of unfair competition and trademark protection"); *see also Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993) (recognizing the uniformity of patent law among the United States Courts and the absence of any difference in the law in the forums involved; reversing district court's dismissal of first-filed declaratory judgment action by alleged patent infringer). Moreover, SCC has not pointed to any relevant difference in the law between North Carolina and Illinois applicable to the claims in the two actions.

Also, as made clear in Personified's motion to transfer the action to Illinois, this case belongs in Illinois anyway even if SCC had filed it first.[1]  The Northern District of Illinois presents the most appropriate and efficient forum for the adjudication of this action. Personified has not engaged in any significant conduct or use of the PERSONIFIED mark in the Eastern District of North Carolina. Personified's employees and the relevant documents are largely located here in Chicago. The lead counsel for both parties is located in Chicago. In sum, all indications are that this case can and would be tried more effectively and efficiently in Chicago,

---

[1]    For the Court's convenience, Personified includes herewith as Exhibit 3 a copy of the memorandum in support of the motion to transfer (excluding the exhibits thereto) that CareerBuilder and Personified recently filed in the Eastern District of North Carolina.

Illinois, not Raleigh, North Carolina. While Personified acknowledges that the decision regarding the more appropriate forum needs to be made by the court in the Eastern District of North Carolina (the transferor court), this issue further demonstrates why Personified did not engage in "improper forum shopping" by filing in Illinois. Indeed, by filing this case in Illinois, Personified acted to achieve a prompt adjudication of this case in the most appropriate forum for such adjudication.

**B.      Personified Did Not Engage In Any Improper Procedural Fencing Given The Parties' Fundamental Disagreement Regarding Their Respective Rights.**

SCC has cited a variety of cases from the Seventh Circuit Court of Appeals and the Northern District of Illinois for the proposition that an alleged trademark infringer cannot assert a declaratory judgment action when the party threatening a trademark infringement claim subsequently asserts an infringement claim in a different court. However, in each of those cases, the Court relied upon the settlement discussions between the parties and/or the dilatory conduct of the alleged infringer in deciding to dismiss the first-filed declaratory judgment action. *See Tempco Electric Heater Corp. v. Omega Eng'g,* 819 F.2d 746, 749 (parties communicated about dispute over several weeks after defendant ignored initial cease and desist letter); *Trippe Mfg. Co. v. American Power Conversion*, 46 F.3d. 624, 625 (7th Cir. 1995) (detailing nearly 15 months of discussions and an ongoing Opposition proceeding at the PTO before the first complaint was filed); *Eli's Chicago Finest, Inc v. The Cheesecake Factory, Inc.*, 23 F.Supp.2d 906, 906 (N.D. Ill. 1998) (alleged infringer filed a declaratory judgment suit but did not serve defendants until settlement negotiations broke down); *Successories, Inc. v. Arnold Palmer Enterprises, Inc.*, 990 F.Supp. 1044, 1045 (N.D. Ill. 1998) (alleged infringer filed declaratory judgment action after three months of settlement negotiations).

In this case, Personified responded to a threat to its way of doing business and a settlement demand that it had no intention of accepting by seeking judicial relief immediately.[2] In this sense, the case is more analogous to the decision in *Plough, Inc. v. Allergan, Inc.*, 741 F. Supp. 144 (W.D. Tenn. 1990), in which a district court exercised its discretion to keep jurisdiction over a declaratory judgment action filed by an alleged infringer before a trademark infringement action had been filed in a different court:

> This Court is not persuaded that Plough has used the declaratory action as a means of "procedural fencing" or as "an arena for a race for res judicata." The complaint alleges that Plough was threatened with litigation by Allergan if it did not cease promotion of SHADE. Plough merely filed suit in order to have a determination from a federal court as to whether its actions were lawful. There is no allegation that Plough coaxed Allergan into delaying to file suit so that Plough could file first and choose its forum. In this day and age, a party who threatens to file suit in order to obtain a concession, but delays, acts at the risk that the threatened party will be the first to file.

*Id.* at 147. Like *Plough*, and unlike the various cases upon which SCC relies, Personified was faced with direct threats to its way of doing business – not an offer to negotiate – and it responded appropriately to protect its interests given its lack of interest in a compromise with respect to the issues raised and demands made by SCC. According to SCC, it is impermissible for Personified to file a declaratory judgment action after it is put on notice that SCC might file its own complaint. This is not and cannot be the law given the language and purpose of the Federal Declaratory Judgment Act.

---

[2]    Notwithstanding SCC's claims to the contrary, Personified did not know if and when SCC would file an infringement suit. *Cf.* SCC Mot. to Dismiss at 4 ("Personified knew of [SCC's] planned legal action....") & 6 ("Personified knew full well that [SCC] would sue it by May 30."). In any event, SCC did not sue by May 30, but instead took six additional days after Personified had filed suit before filing in North Carolina.

This case presents a unique situation. Unlike in *Tempco* and its progeny, Personified essentially faced two choices upon receiving SCC's demand letter given its view of the claims asserted in that letter – total capitulation to SCC's extortionate demands or the pursuit of a judicial confirmation of its right to do business in a manner that it considers appropriate. That Personified chose the latter course should not doom this case to dismissal. Rather, this Court should exercise its discretion to retain jurisdiction of Personified's complaint so that the parties' respective claims can be adjudicated in the best forum for the case.

## II.     EVEN IF THE COURT DECLINES JURISDICTION, IT SHOULD STAY THE DISMISSAL OF THIS MATTER UNTIL THE EASTERN DISTRICT OF NORTH CAROLINA RULES ON PERSONIFIED'S MOTION TO TRANSFER.

As noted above, Illinois is the most appropriate forum for this action. Therefore, even if this Court should choose to exercise its discretion to decline jurisdiction in this matter, it should wait to do so until the Eastern District of North Carolina has ruled on Personified's motion to transfer. Staying the decision on the motion to dismiss prevents the potential waste of judicial resources that would occur if this Court dismissed the Illinois Action and the Eastern District of North Carolina Court subsequently transferred the North Carolina Action to Illinois anyway. In such an instance, the parties would need to wait until the transfer is completed to commence litigation proceedings and Personified would need to refile its declaratory judgment action as a counterclaim in response to SCC's complaint.

## CONCLUSION

For the foregoing reasons the Court should exercise its discretion to retain jurisdiction over this matter and deny Defendant's motion to dismiss. Even if the Court decides to decline jurisdiction of this matter, it should stay such a decision until the court in the Eastern District of North Carolina rules on the pending motion to transfer.

Date:  July 11, 2008

                                /s/ Matthew W. Walch
                                Matthew W. Walch
                                Christopher R. Freeman
                                LATHAM & WATKINS LLP
                                Sears Tower, Suite 5800
                                Chicago, IL 60606
                                Telephone:  (312) 876-7700
                                Facsimile:    (312) 993-9767

                                Attorneys for Personified, LLC

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PERSONIFIED, LLC, | ) | |
| | ) | |
| | ) | **Case No. 08 CV 3121** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Hon. Samuel Der-Yeghiayan** |
| | ) | **Magistrate Judge Michael T. Mason** |
| SALES CONSULTANTS OF CARY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## EXHIBIT INDEX

1.   Declaration of Mary Delaney

2.   5/21/08 Corresp. fr. R. Taylor to M. Walch

3.   Summary of Nature of Case

# EXHIBIT 1

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:08-CV-00260-BR

SALES CONSULTANTS OF CARY, LLC          )
d/b/a PERSONIFY,                        )
                                        )
              Plaintiff,                )
                                        )
v.                                      )
                                        )
CAREERBUILDER, LLC and                  )
PERSONIFIED, LLC,                       )
                                        )
              Defendants.               )

## DECLARATION OF MARY DELANEY

I, Mary Delaney, hereby declare under the penalty of perjury that:

1.      I have personal knowledge of the facts set forth herein.  If sworn as a witness to testify in this matter, I could and would testify to the facts as set forth herein.

2.      I am the president of Personified, LLC ("Personified").

3.      Personified is a wholly owned subsidiary of CareerBuilder, LLC ("CareerBuilder").

4.      As of April 1, 2008, CareerBuilder assigned all rights to the mark PERSONIFIED, including its application to register that mark, to Personified together with the business therewith.  Since this time, Personified has been the exclusive user of the PERSONIFIED trademark.

5.      As a result of Personified's use of the PERSONIFIED mark since March of 2008, consumers of Personified's services have come to associate the PERSONIFIED mark exclusively with Personified.

6.     Personified's office is located in Chicago, Illinois.  Thirty-seven of the forty-seven Personified employees work in Personified's Chicago office.

7.     Personified's other 10 employees work from their respective homes in various locations around the country, although each of these employees report to supervisors in Chicago and work directly with the Chicago office of Personified when conducting their routine business activities.

8.     Practically all of Personified's documents, electronic and otherwise, relevant to its use of the PERSONIFIED mark are located in Chicago, Illinois.

9.     While Personified conducts operations in various areas of the country, it has not conducted any significant business activity in North Carolina, and specifically, the eastern portion of the state (including Raleigh, Fayetteville and points to the east).

10.     CareerBuilder did not conduct any significant business activity using the PERSONIFIED mark in North Carolina before assigning that mark to Personified.

11.     I declare under penalty of perjury, as provided in 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on July 10, 2008.

_Mary Delaney_
_____
Mary Delaney

**EXHIBIT 2**



*Attorneys*

MANNING FULTON & SKINNER PA
3605 GLENWOOD AVENUE
GLENWOOD PLAZA, SUITE 500
RALEIGH, NC 27612-3970

P. O. BOX 20389
RALEIGH, NC 27619-0389

RITCHIE W. TAYLOR
PHONE: 919.787.8880
FAX: 919.571.2504
RTAYLOR@MANNINGFULTON.COM

May 21, 2008

**VIA FEDEX**

Matthew W. Walch, Esq.
Latham & Watkins LLP
233 S. Wacker Drive Suite 5800
Chicago, IL 60606-6362

Re:    **PERSONIFY Trademark Infringement;**
       **Our file: 17537-G38099**

Dear Mr. Walch:

Our firm represents Sales Consultants of Cary, LLC ("Sales Consultants") in its intellectual property matters. Our client has brought it to our attention that your client, Careerbuilder, LLC ("CareerBuilder") has filed an intent-to-use application with the United States Patent and Trademark Office to register PERSONIFIED for "Consulting services in the field of human resources, employee recruitment, hiring, retention, development and management; Business research and surveys" in International Class 35. The application serial number is 77/355,623. It was filed on December 19, 2007. A copy of supporting documentation is enclosed.

My client has spent substantial sums in advertising revenue promoting my client's business and trademarks on CareerBuilder's website. Therefore, as your client is aware, our client has used its PERSONIFY service mark ("PERSONIFY Mark") in connection with its talent acquisition services since 2004. They began doing business with CareerBuilder using its personifysearch.com domain name and web site in 2005. CareerBuilder has mailed invoices to personifysearch.com on a monthly basis since 2006. Our client has spent considerable time and resources to protect its trade name and service mark and developing the goodwill associated therewith. The mark enjoys a most valuable and excellent reputation. Sales Consultants guards this fine reputation with the utmost vigilance. CareerBuilder's use of the trademark is likely to cause confusion in the marketplace as this designation is virtually identical to our client's mark. In fact, our client has already experienced actual confusion in the marketplace with multiple businesses, which confusion has harmed my client's business. Additionally, your client's sales representatives have attempted to exploit this confusion by contacting members of my client's sales force attempting to gain access to their LinkedIn.com accounts so CareerBuilder could exploit the confusion to solicit my client's customers (see enclosed invitations).

Our client has rights superior to those of CareerBuilder in this mark. We maintain CareerBuilder's use of PERSONIFIED constitutes trademark infringement and unfair competition under federal and/or state law. Federal and state laws provide for significant penalties for such infringing conduct, including a company's profits, actual damages incurred by

Matthew W. Walch, Esq.                    Page 2                        May 21, 2008

the trademark owner, treble damages, injunctions and attorneys' fees. Your client's substantial commercial interaction with Sales Consultants' and intentional attempts to divert business using the infringing mark will only enhance Sales Consultant's case for damages.

Accordingly, in order to avoid further legal action, we hereby demand CareerBuilder take the following actions **on or before Friday, May 30, 2008 at 12:00 p.m. ("Deadline")**:

1.      CareerBuilder shall immediately remove, destroy, and cease using all signs, websites, and advertising materials displaying the PERSONIFIED Mark (either by itself or in connection with other words).

2.      CareerBuilder shall immediately withdraw its trademark application for the PERSONIFIED trademark.

3.      CareerBuilder shall assign to Sales Consultants for no additional consideration the domain name www.personified.com.

4.      Immediately cease and desist any and all efforts to contact Sales Consultant's clients and referral sources in a manner intended to confuse them as to your client's identity, such as LinkedIn.com access.

5.      CareerBuilder shall acknowledge in writing our client's rights to the PERSONIFY and PERSONIFIED marks and shall irrevocably covenant not to contest or oppose them in the future.

4.      CareerBuilder shall, at execution of an agreement resolving this matter, pay our client the sum of One Hundred Thousand Dollars ($100,000.00) in damages to compensate our client for CareerBuilder's intentional trademark infringement, loss of goodwill, and reimbursement of our client's expenses incurred in order to remedy your client's violations.

Any such out-of-court resolution will depend upon execution of a definitive agreement satisfactory in form and content to our client. In exchange for compliance with the settlement proposal outlined above, my client would executed a release agreement releasing your client from any and all liability associated with this matter. In the absence of a rapid resolution by the Deadline, our client will have no choice but to pursue all available legal and equitable remedies to protect the PERSONIFY Mark.

However, as I have stated previously, our client is not in the business of using litigation as a strategy to prevent legitimate competition in the marketplace. We consider the proposed terms of our settlement as outlined above to be fair and, if met, will avoid the resulting litigation and adverse impact on your client's business.

Once you have had an opportunity to review this correspondence with your client, I look forward to working with you to develop a solution to the current situation.

{570667.RWT.17537.G38099 }

Matthew W. Walch, Esq.                    Page 3                    May 21, 2008

This letter is for settlement purposes only, and nothing contained herein shall be deemed an admission against interest, a waiver of rights, or an election of remedies.

Sincerely yours,

MANNING, FULTON & SKINNER, P.A.

Ritchie W. Taylor

cc:  Ryan Carfley (via email)

{570667.RWT.17537.G38099 }

Personified

About Us    Services    Insights    Work for Us    Contact Us



Optimize talent
in every area
of your business.

**Welcome to Personified**

As a consulting firm specializing in talent optimization and management, Personified helps employers understand and leverage the relationship between talent management and company performance.

Our customized talent solutions provide the best return on investment in people, processes, and technology. We deliver unmatched talent insights using our access to a vast talent pool, in-depth employment data, and top recruitment media.

From helping you locate people who can further your objectives, to creating an inclusive, appealing workplace of choice, Personified provides fresh insights and smart solutions that deliver results.

Subscribe to our e-newsletter



Subscribe

Optimize your workforce.
**E-mail or call us today at
800-610-8790**

 **TALENT ACQUISITION**
Identify, attract and acquire a workforce capable of realizing your goals. more

 **EMPLOYMENT BRANDING**
Stand out from your competitors for talent with a strong employment brand. more

 **DIVERSITY & INCLUSION
WORKFORCE TRANSFORMATION**
Create an inclusive and innovative workforce that thrives on differences. more

 **EMPLOYEE ENGAGEMENT**
Improve employee satisfaction and retention with training, mentoring and succession planning programs. more

Copyright 2008 Personified    Contact Us    Privacy Statement    Sitemap    Corporate Site.com    Home    PCN Extranet

Trademark Electronic Search System (TESS)                    Page 1 of 2



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Fri May 16 04:05:05 EDT 2008*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

[ Logout ]  Please logout when you are done to release system resources allocated for you.

[ Start ] List At: [        ]    OR [ Jump ] to record:       **Record 2 out of 6**

| TARR Status | ASSIGN Status | TDR | TTAB Status |  ( Use the "Back" button of the Internet Browser to return to TESS)

# PERSONIFIED

| | |
|---|---|
| **Word Mark** | **PERSONIFIED** |
| **Goods and Services** | IC 035. US 100 101 102. G & S: Consulting services in the field of human resources, employee recruitment, hiring, retention, development and management; Business research and surveys |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 77355623 |
| **Filing Date** | December 19, 2007 |
| **Current Filing Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | April 15, 2008 |
| **Owner** | (APPLICANT) CareerBuilder LLC LTD LIAB CO DELAWARE 200 North LaSalle Street, Suite 1100 Chicago ILLINOIS 60601 |
| **Attorney of Record** | Matthew W. Walch |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Case 1:08-cv-03123    Document 18    Filed 07/11/2008    Page 22 of 41
Case 1:07-cv-99999    Document 3513    Filed 05/30/2008    Page 12 of 24

Page 1 of 5

Here is the email invitation to connect to Linkedin from Joe Tate.

I also including the the copied web pages and the screen snap shots from his invitation and his profile



5/21/2008

- o Q&A
- o Jobs
- o Recommendations
- • Groups
  - o My Groups
  - o Groups Directory
  - o Create a Group

Add Connections

## Bryan Jones



**Director of Recruiting at Personify**

What are you working on?

Bryan [            ]

Save | Clear | | Cancel |

Visible to your connections only [ Edit ]

profile is 95% complete [ Edit ]

## Inbox

Which invitations should you accept?

## Invitations



**Invitation to connect on LinkedIn**

From
Joe Tate
Date
April 29, 2008
To
Bryan Jone
Status
Pending
Bryan,

I'd like to add you to my professional network on LinkedIn.

-Joe
Accept I don't know Joe Tate If you don't know Joe Tate, click here and he/she won't be able to re-invite you. Archive This message will be moved to your archived invitations. Accept or decline whenever you like. Flag as Spam Reply

Change your invitation notification setting

Compose message

- • Send message to a connection
- • Send InMail or Introduction
- • Send invitation
- • Send recommendation
- • Request recommendation
- • Send job notification

Inbox

- • Action Items (1)
- • Messages
- • InMails
- • Introductions
- • Invitations (1)
- • Profiles
- • Q&A
- • Jobs
- • Recommendations
- • Network Updates

- • Company
  - o Help & FAQ
  - o About LinkedIn

5/21/2008

- ○ LinkedIn Blog
- ○ LinkedIn Store
- ○ Advertise With Us
- **Tools**
  - ○ Overview
  - ○ Outlook Toolbar
  - ○ Browser Toolbar
  - ○ JobsInsider
- **Premium**
  - ○ Post a Job
  - ○ Manage Jobs
  - ○ Corporate Solutions
  - ○ Upgrade Your Account

LinkedIn Corporation © 2008

- User Agreement
- Privacy Policy
- Copyright Policy

Use of this site is subject to express terms of use, which prohibit commercial use of this site. By continuing past this page, you agree to abide by these terms.

Send your feedback and help us continue to improve LinkedIn.



- Introductions
- Invitations (1)
- Profiles
- Q&A
- Jobs
- Recommendations
- Network Updates

- Company
  - Help & FAQ
  - About LinkedIn
  - LinkedIn Blog
  - LinkedIn Store
  - Advertise With Us
- Tools
  - Overview
  - Outlook Toolbar
  - Browser Toolbar
  - JobsInsider
- Premium
  - Post a Job
  - Manage Jobs
  - Corporate Solutions
  - Upgrade Your Account

LinkedIn Corporation © 2008

- User Agreement
- Privacy Policy
- Copyright Policy

Use of this site is subject to express terms of use, which prohibit commercial use of this site. By continuing past this page, you agree to abide by these terms.

Send your feedback, and help us continue to improve LinkedIn.

From: messages noreply@bounce.linkedin.com [mailto:messages-noreply@bounce.linkedin.com] On Behalf Of Joe Tate
Sent: Tuesday, April 29, 2008 1:59 PM
To: Bryan Jone
Subject: Invitation to connect on LinkedIn

## LinkedIn

Joe Tate requested to add you as a connection on LinkedIn

Bryan,

I'd like to add you to my professional network on LinkedIn.

-Joe

View invitation from Joe Tate

WHY MIGHT CONNECTING WITH JOE TATE BE A GOOD IDEA?

Joe Tate's connections could be useful to you
After accepting Joe Tate's invitation, check Joe Tate's connections to see who else you may
know and who you might want an introduction to. Building these connections can create
opportunities in the future.

© 2008 LinkedIn Corporation

5/21/2008

**Ritchie Taylor**

| | |
|---|---|
| **From:** | Jenny Hollis [jhollis@personifysearch.com] |
| **Sent:** | Tuesday, April 29, 2008 2:25 PM |
| **To:** | 'Ryan Carfley' |
| **Subject:** | FW: Invitation to connect on LinkedIn |

*Jenny*

**From:** messages-noreply@bounce.linkedin.com [mailto:messages-noreply@bounce.linkedin.com] **On Behalf Of** Joe Tate
**Sent:** Tuesday, April 29, 2008 1:57 PM
**To:** Jenny Siferd
**Subject:** Invitation to connect on LinkedIn

# LinkedIn

Joe Tate requested to add you as a connection on LinkedIn:

Jenny,

I'd like to add you to my professional network on LinkedIn.

-Joe

View invitation from Joe Tate

**WHY MIGHT CONNECTING WITH JOE TATE BE A GOOD IDEA?**

**Have a question? Joe Tate's network will probably have an answer**
You can use LinkedIn Answers to distribute your professional questions to Joe Tate and extended network. You can get high-quality answers from experienced professionals.

© 2008, LinkedIn Corporation

5/21/2008

**Ritchie Taylor**

| | |
|---|---|
| **From:** | Rose Hays [rhays@personifysearch.com] |
| **Sent:** | Tuesday, April 29, 2008 2:16 PM |
| **To:** | 'Ryan Carfley' |
| **Subject:** | FW: Invitation to connect on LinkedIn |

Here you go.

La Rose K. Hays, Executive Recruiter
Personify.
101 Shannon Oaks Circle, Suite 101
Cary, NC  27511
Phone:  800.873.6188 x111
rhays@personifysearch.com

**From:** messages-noreply@bounce.linkedin.com [mailto:messages-noreply@bounce.linkedin.com] **On Behalf Of**
**Joe Tate**
**Sent:** Tuesday, April 29, 2008 1:59 PM
**To:** Rose Hays
**Subject:** Invitation to connect on LinkedIn

# LinkedIn

Joe Tate requested to add you as a connection on LinkedIn:

Rose,

I'd like to add you to my professional network on LinkedIn.

-Joe

View invitation from Joe Tate

Learn how LinkedIn can power your career in 2008. Click here.

© 2008, LinkedIn Corporation

5/21/2008

**Ritchie Taylor**

| | |
|---|---|
| **From:** | Carrie Smith [csmith@personifysearch.com] |
| **Sent:** | Tuesday, April 29, 2008 3:07 PM |
| **To:** | 'Ryan Carfley' |
| **Subject:** | FW: Invitation to connect on LinkedIn |

http://www.linkedin.com/profile?viewProfile=&key=13567440&authToken=0u1L&authType=name

*Carrie Smith*

Personify
Account Executive
IT Sales
201 Shannon Oaks Circle
Suite 101
Cary, NC 27511
(800) 875-6188 x110
(919) 460-0642 – fax

Learn more about me and PERSONIFY.
www.personifysearch.com/carries

**From:** messages-noreply@bounce.linkedin.com [mailto:messages-noreply@bounce.linkedin.com] **On Behalf Of** Joe Tate
**Sent:** Tuesday, April 29, 2008 12:57 PM
**To:** Carrie Smith
**Subject:** Invitation to connect on LinkedIn

# LinkedIn

Joe Tate requested to add you as a connection on LinkedIn:

Carrie,

I'd like to add you to my professional network on LinkedIn.

-Joe

View invitation from Joe Tate

Learn how LinkedIn can power your career in 2008. Click here.

© 2008, LinkedIn Corporation

No virus found in this incoming message.
Checked by AVG.

5/21/2008

**EXHIBIT 3**

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:08-CV-00260-BR

| | |
|---|---|
| SALES CONSULTANTS OF CARY, LLC<br>d/b/a PERSONIFY,<br><br>       Plaintiff,<br><br>v.<br><br>CAREERBUILDER, LLC and<br>PERSONIFIED, LLC,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **MEMORANDUM IN SUPPORT OF<br>ITS MOTION TO DISMISS OR, IN<br>THE ALTERNATIVE, TRANSFER<br>ACTION** |

## SUMMARY OF NATURE OF CASE

Personified, LLC ("Personified"), a wholly owned subsidiary of CareerBuilder, LLC

("CareerBuilder"), has used the PERSONIFIED trademark since March of 2008 to consult with

companies regarding their employee management strategies.  On May 21, 2008, counsel for

Sales Consultants of Cary, LLC ("SCC"), an executive search company, sent a letter to counsel

for CareerBuilder making a series of extortionate demands concerning Personified's use of the

PERSONIFIED trademark.  In particular, SCC demanded, *inter alia*, that CareerBuilder pay

$100,000 in supposed "damages" and transfer the "personified.com" domain name to SCC.  SCC

premised its demand on the allegation that CareerBuilder's use of the PERSONIFIED mark

infringed SCC's purported common law right in the trademark PERSONIFY and otherwise

constituted unfair competition under state law.

To address the demands included in the letter of SCC's counsel, Personified filed a

complaint with the United States District Court for the Northern District of Illinois on May 30,

2008 (the "Illinois Action").  With that Complaint, Personified sought a declaratory judgment

providing that: (1) it had not violated any law by using the PERSONIFIED mark; (2) it would

not violate any law by using that mark in the future; and (3) it would not need to pay SCC any amount as a result of its use of the PERSONIFIED mark.

On June 5, 2008 (six days after Personified filed its complaint for declaratory relief in Illinois), SCC filed this action against CareerBuilder and Personified in the United States District Court for the Eastern District of North Carolina (the "North Carolina Action"). CareerBuilder and Personified now move this Court to dismiss the North Carolina Action under the first-filed rule because Personified already filed a mirror action in Illinois federal court. *Volvo Construction Equipment North America, Inc. v. CLM Equipment Co.,Inc.*, 386 F.3d 581, 594-95 (4th Cir. 2004) (recognizing priority given to first-filed actions).

If the Court denies their motion to dismiss, CareerBuilder and Personified move in the alternative to transfer this case to the United States District Court for the Northern District of Illinois because that venue presents a more convenient forum for the claims asserted here. The convenience of the Illinois venue arises from the fact that Personified, the party responsible for the allegedly infringing conduct and supposed acts of unfair competition, is based in Illinois and all of Personified's relevant employees and documents are located in Illinois. In addition, the bulk of the acts complained of have occurred in or have been directed from Illinois. Finally, the lead counsel for the parties in both actions practice for law firms in Chicago, Illinois. Numerous cases have recognized the appropriateness of a transfer in trademark infringement cases with analogous facts. *See, e.g., Premier Herbs, Inc. v. Nature's Way Prods., Inc.,* 689 F. Supp. 180, 186 (S.D.N.Y. 1988); *International Comfort Prods., Inc. v. Hanover House Indus., Inc.,* 739 F. Supp. 503, 506 (D. Ariz. 1989); *H.B. Sherman Mfg. Co. v. Rain Bird Nat. Sales Corp.,* 979 F. Supp. 627, 632 (N.D. Ill. 1997).

## SUMMARY OF FACTS THAT PERTAIN TO
## THE MATTER BEFORE THE COURT FOR RULING

On December 19, 2007, CareerBuilder filed an intent-to-use trademark application for the mark PERSONIFIED with the United States Patent and Trademark Office covering certain employment consulting services. *See* Declaration of Matthew W. Walch ("Walch Decl."), Ex. A at ¶ 5 & Ex. 1 (Illinois Action Complaint).[1]  On March 24, 2008, RightFish, LLC, a wholly owned subsidiary of CareerBuilder changed its name to "Personified, LLC." *See id.* at ¶ 6.  As of April 1, 2008, CareerBuilder assigned all rights to the mark PERSONIFIED, including its application to register that mark, to its wholly-owned subsidiary Personified together with the business therewith. *See id.*  Since this time, Personified has been the exclusive user of the PERSONIFIED trademark. *See* Declaration of Mary Delaney ("Delaney Decl.") at ¶ 4.[2]  As a result of this use, consumers of Personified's services have come to associate the PERSONIFIED mark exclusively with Personified. *See id.* at ¶ 5.

Personified's office is located in Chicago, Illinois. *See id.* at ¶ 6.  Thirty-seven of the forty-seven Personified employees work in that office. *See id.*  Personified's other ten employees work from their respective homes in various locations around the country, although each of these employees report to supervisors in Chicago and work directly with Personified's Chicago office when conducting his or her routine business activities. *See id.* at ¶ 7.  Practically all of Personified's documents, electronic and otherwise, relevant to its use of the PERSONIFIED mark are located in Chicago, Illinois. *See id.* at ¶ 8.  While Personified conducts operations in various areas of the country, it has not conducted any significant business activity in North Carolina, and specifically, the area of the state covered by this district. *See id.* at ¶ 9.

---

[1]  The Walch Declaration is attached hereto as Exhibit I.

[2]  The Delaney Declaration is attached hereto as Exhibit II.

Similarly, CareerBuilder did not conduct any significant business activity using the PERSONIFIED mark in North Carolina or in the Eastern District before assigning its mark to Personified. *See id.* at ¶ 10.

On May 21, 2008, counsel for SCC sent counsel for CareerBuilder a letter demanding, *inter alia*, that CareerBuilder: (1) immediately remove, destroy and cease using all signs, websites, and advertising materials displaying the PERSONIFIED mark; (2) withdraw its trademark application for the PERSONIFIED mark; (3) assign to SCC for no additional consideration the "personified.com" domain name; (4) acknowledge in writing SCC's rights to the PERSONIFY and PERSONIFIED mark (even though SCC has never alleged or shown that it has ever used the PERSONIFIED mark); (5) irrevocably covenant not to contest or oppose the PERSONIFY and PERSONIFIED marks in the future; and (6) pay SCC $100,000 in supposed damages. *See* Walch Decl., Ex. B. In that letter, counsel for SCC also stated that "[a]ny…out-of-court resolution will depend on execution of a definitive agreement [embodying all of SCC's proposed terms]." *Id.* This letter made no offer for compromise, but rather insisted that CareerBuilder acquiesce to the purportedly "fair" terms of SCC's letter or face an uncertain future clouded by vague and unreasonable threats. *See id.*

In response to this letter and the various demands set forth therein, Personified, the user of the mark in question, filed a declaratory judgment action in the United States District Court for the Northern District of Illinois on May 30, 2008. *See* Walch Decl., Ex. A (Illinois Action Compl.). Through the filing of such a complaint, Personified sought to quickly and efficiently address the exorbitant demands of SCC. Personified effected service of the Illinois Action Complaint on SCC by June 2, 2008. *See* Walch Decl. at Ex. C (Proof of Service).

In an apparent effort to avoid the prompt adjudication of this action by the Illinois federal court, SCC filed this action on June 6, 2008 (the "North Carolina Action") and moved to dismiss the Illinois action on June 12, 2008, through its counsel, Winston & Strawn, LLP. *See* Walch Decl., Ex. D (appearances of three Winston & Strawn lawyers). SCC's motion to dismiss is currently pending in the Illinois federal court. The North Carolina Action asserts the very same claims for which Personified already seeks declaratory relief in the Illinois Action.

In subsequent conversations with the counsel for SCC in the Illinois Action and the North Carolina Action, counsel for CareerBuilder has been informed that the primary intellectual property counsel for SCC in both cases will be Donald Mizrek of Winston & Strawn, LLP. *See* Walch Decl. at ¶¶ 6-7. Mr. Mizrek practices law in Chicago, Illinois. *See* Walch Decl., Ex. E (Winston & Strawn Web Page).

## ARGUMENT

**I.    THIS ACTION SHOULD BE DISMISSED BECAUSE PERSONIFIED HAD ALREADY FILED A COMPLAINT CONCERNING THE CLAIMS ASSERTED BY SCC IN THE NORTHERN DISTRICT OF ILLINOIS.**

### A.    The Fourth Circuit Recognizes the First-Filed Rule.

Courts throughout the Fourth Circuit have generally "favor[ed] the first-filed forum" when deciding whether a suit filed in that circuit should proceed when another case asserting the same issues has already been filed in a different forum. *See R.J. Reynolds Tobacco Co. v. Star Scientific, Inc.,* 169 F. Supp. 2d 452, 455 (M.D.N.C. 2001). Under the first-filed rule, the first court to properly exercise jurisdiction over a controversy, "should be allowed to proceed with [that suit] without interference from other courts under suits subsequently filed." *Carbide & Carbon Chem. Corp. v. U.S. Indus. Chem.*, 140 F.2d 47, 49 (4th Cir. 1944); *Volvo Construction Equipment North America, Inc. v. CLM Equipment Co.,Inc.*, 386 F.3d 581, 594 -95 (4th Cir. 2004); *See First Financial Savings Bank, Inc. v. American Bankers Insurance Company of*

*Florida, Inc.*, 699 F. Supp. 1164, 1166 (E.D.N.C. 1988). Application of the first-filed rule is appropriate where "two distinct federal courts have concurrent jurisdiction over actions *embracing the same issue.*" *SAS Institute, Inc. v. Practicingsmarter, Inc.*, 353 F. Supp. 2d 614, 617 (M.D.N.C. 2005) (emphasis added).

In this case there is no dispute about which action was first-filed. Personified filed its Illinois Action for declaratory judgment on May 30, 2008, and that action was served upon SCC on the following Monday, June 2, 2008. SCC initiated its North Carolina Action nearly a week later, on June 5, 2008. SCC's North Carolina Action alleges violations of the *exact same statues and common laws* that Personified asserts were *not* violated in the Illinois Action. Accordingly, the North Carolina Action is a virtual "mirror image" of the Illinois Action. The Court should thus apply the first-filed rule to dismiss the North Carolina Action.

In the context of the first-filed rule, "[t]he fact that one suit is for a declaratory judgment does not change the general rule that the first-filed case should go forward." *SAS Institute*, 353 F. Supp. 2d at 617. While the right to a declaratory judgment is not absolute, but rather in the sound discretion of the district court where the action is filed, "[d]eclaratory judgment actions are proper when there is a potential lawsuit." *Learning Network, Inc. v. Discovery Communications, Inc.*, 11 Fed.Appx. 297, 301 (4th Cir. 2001). To address a letter making significant demands regarding its use of the PERSONIFIED trademark, Personified filed a declaratory judgment action in the Northern District of Illinois. The fact that Personified is seeking an adjudication declaring its right to use the PERSONIFIED mark does not change the calculus of the first-filed rule. Accordingly, this Court should dismiss SCC's later-filed North Carolina Action as duplicative and unnecessary.

Further, SCC will not be prejudiced by a dismissal of the North Carolina Action. As noted above, in the North Carolina Action, SCC alleges that Personified violated the Lanham Act, state and federal unfair competition law, and common law. Personified's Illinois Action stems from the exact same set of operative facts, and seeks a ruling that Personified has *not* committed violations of the Lanham Act, state or federal unfair competition law, or common law trademark rights. *All* of SCC's allegations against Personified can – and indeed must, under Fed. R. Civ. Pro. 13(a) – be plead as counterclaims in response to the Illinois Action. Accordingly, SCC will have its day in court, but it will ultimately occur in the Northern District of Illinois.

### B.    The Balance of Convenience Exception to the First Filed Rule Does Not Apply Here.

"The Fourth Circuit has recognized the 'first to file' rule . . ., giv[es] priority to the first suit absent a showing of balance of convenience in favor of the second." *Learning Network, Inc. v. Discovery Communications, Inc.*, 11 Fed. Appx. 297, 300 (4th Cir. 2001). Thus, to overcome the first-filed rule, SCC needs to show that the balance of conveniences weighs in its favor. Here, it cannot make such a showing because that balance of convenience weighs *significantly* in Personified's favor, not SCC's.

SCC claims to be an executive search firm based in Cary, North Carolina. *See* North Carolina Action Compl. at ¶ 2. According to SCC's website, it also has offices in New Jersey. *See* Walch Decl., Ex. F. Personified, on the other hand, is a consulting firm based in Chicago, Illinois. *See* Delaney Decl. at ¶ 6. Thirty-seven of its forty-seven employees work out of Chicago and the other ten employees work from their respective homes around the country for various Personified employees in Chicago. *See id.* at ¶¶ 6-7. Practically all of Personified's documents and electronic files relevant to this litigation are located in Chicago, Illinois. *See id.* at ¶ 8. Moreover, neither Personified nor CareerBuilder have conducted any significant sales

activity in connection with the PERSONIFIED mark in North Carolina or specifically in this district. *See id.* at ¶¶ 9-10.

Finally, SCC has already shown that it can litigate matters in Chicago. SCC has already engaged the services of three different lawyers from Winston & Strawn, LLP ("Winston") in Chicago to file a motion to dismiss the Illinois Action on their behalf. *See* Walch Decl., Exs. D & E. SCC's North Carolina counsel has also informed counsel for CareerBuilder that: (1) Donald Mizrek, one of the Chicago lawyers from Winston, will be directing SCC's litigation strategy in this case; and (2) CareerBuilder's counsel should meet and confer with Mr. Mizrek regarding issues related to the North Carolina Action. *See id.* at ¶ 6. Given that both primary counsel for the parties are based in Chicago, Illinois and all of the relevant witnesses and evidence on the defense side in this action reside in Chicago, the balance of convenience for both parties favors litigating this case in Illinois.

**C.    No Other Exception to the First-Filed Rule Applies Here.**

While, "[t]he Fourth Circuit has not stated explicitly that special circumstances may warrant an exception to the first-filed rule," some courts have refused to apply the rule in certain, narrow contexts. *Learning Network, Inc. v. Discovery Communications, Inc.*, 11 Fed.Appx. 297, 300 n.2 (4th Cir. 2001). *See Am. Household Prods., Inc. v. Evans Mfg., Inc.*, 139 F.Supp.2d 1235, 1239-40 (N.D.Ala. 2001). For example, where a first-to-file plaintiff reveals a "hip pocket"[3] suit once settlement negotiations break down or a first-to-file plaintiff is blatantly forum shopping, courts occasionally apply the so-called "anticipatory filing exception" to the first-filed rule. *See Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 361 (W.D.N.C. 2003).

---

[3] In this context a "hip pocket" suit refers to a suit that a party files, but does not serve, prior to settlement negotiations. Then, if settlement negotiations start to break down, the party serves its adversary with the suit, only then revealing that it was filed much earlier in order to abuse the first-filed rule. *See Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 359 (W.D.N.C. 2003).

Filing suit before the issues of a case are clear or before the "true dispute" is known is also indicative of "anticipatory suits." *See id.*

None of these circumstances are present in the instant case. Personified's Illinois Action was not an "anticipatory suit," but rather a legitimate exercise of Personified's rights under the Declaratory Judgment Act. 28 U.S.C. §§ 2201, 2202. Personified was not seeking to secure a favorable forum, but rather was seeking to vindicate its trademark and competition rights in an appropriate forum such that it could continue doing business with peace of mind. Nor was the filing of the Complaint in the Illinois Action premature in any way. SCC, through counsel, had sent Personified a letter making exorbitant demands.[4] Short of acquiescing to SCC's outrageous demands, Personified felt it had little choice but to seek judicial confirmation of its right to use the PERSONIFIED mark without having to pay any further money to SCC. Indeed, given that it is in the relatively early stages of operation, Personified felt it would be better served by obtaining prompt relief, rather than engaging in protracted discussions with a company that appears to be trying to extort significant money and assets from it with respect to its use of a mark that SCC does not even use.

For the foregoing reasons and the other reasons set forth above, there is no reason to deviate from the first-filed rule here. As a result, this Court should dismiss this action and allow SCC to pursue its claims against Personified and/or CareerBuilder in Illinois.

---

[4] It is also telling that the parties had not engaged in any settlement discussions, nor did SCC's letter suggest settlement negotiations, prior to Personified's filing suit. As the court explained in *Nutrition & Fitness*, the typical application of the "anticipatory filing exception" is where the parties are engaged in settlement negotiations and one party files a lawsuit without serving the other party (i.e. the "hip pocket suit" discussed above). *See Nutrition & Fitness*, 264 F. Supp. 2d at 361. Here, quite the opposite was true. SCC's letter made no offer of negotiation, and contained no indication that SCC was willing to engage in meaningful, reasonable discussions of the parties' respective rights. Rather, SCC essentially demanded that Personified cease all operations in its current form and pay SCC and its counsel arbitrary "damages." Personified immediately sought to protect its interests by filing the Illinois Action and immediately serving the suit on SCC without delay.

## II.     EVEN IF THE COURT DENIES THE MOTION TO DISMISS, IT SHOULD TRANSFER THE NORTH CAROLINA ACTION TO ILLINOIS.

Pursuant to 28 U.S.C. § 1404(a), district courts may transfer actions to other districts based on various factors. "In considering a motion to transfer, the Court [in this Circuit] should consider the following factors: (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws." *Blue Mako, Inc. v. Minidis*, 472 F. Supp. 2d 690, 703 (M.D.N.C. 2007). *See also In re Compania Naviera Joanna S.A.*, 531 F. Supp. 2d 680, 688 (D.S.C. 2007).

Here, factors 1, 2 and 7 weigh heavily in favor of trying this matter in the Northern District of Illinois. Factor 1 – the plaintiff's initial choice of forum – applies in Personified's favor because it was the first to file in this dispute and it filed that action in the Northern District of Illinois. Factor 2 – the relative ease of access to sources of proof – clearly weighs in favor of the Northern District of Illinois. As discussed above, Personified's offices, practically all of its employees and its documents reside in Chicago, Illinois. SCC, in the meantime, has a smaller set of employees with allegedly shared offices in North Carolina and New Jersey. Because the vast majority of evidence and witnesses are located in Chicago, the Court should consider this factor to favor transfer to the Northern District of Illinois. Factor 7 – other factors that make trial easy,

expeditious and inexpensive – favors Illinois as well.  As noted above, primary counsel for both parties are located in Chicago, Illinois.  To litigate this case in North Carolina will require two separate sets of counsel to be involved and will require extensive travel and expense on the parts of both parties.  In sum, the foregoing factors firmly favor trying the case in the Northern District of Illinois.  The remaining factors are either irrelevant to the present matter or neutral with regard to the selection of the proper forum.

Courts have routinely favored transfer of the case to the locus of the alleged infringer in trademark cases like this one.  "For example, if, in a trademark infringement case, it appears that the [alleged infringer] has its principal place of business in the transferee forum, all the [alleged infringer's] witnesses reside there, and the law of that forum state has to be applied, a § 1404(a) transfer may be justified."  *See* Thomas J. McCarthy, *Trademark and Unfair Competition* § 32:73 (4th ed. 2008) (citing *Mag Instrument, Inc. v. Sears, Roebuck & Co.*, 15 U.S.P.Q.2d 1149, 1151 (S.D. Tex 1990) (attached hereto as Ex. III); *Harry Winston, Inc. v. Zale Jewelry Co.*, 191 F. Supp. 686, 693 (S.D.N.Y. 1961); *Pepsi-Cola Co. v. Dr. Pepper Co.*, 214 F. Supp. 377, 383 (W.D. Pa. 1963); *H.B. Sherman Mfg. Co. v. Rain Bird National Sales Corp.*, 979 F.Supp. 627, 632 (N.D. Ill. 1997); *Royall Lyme Bermuda Ltd. v. Costal Fragrance, Inc.*, 45 U.S.P.Q.2d 1058, 1061 (S.D.N.Y 1997) (attached hereto as Ex. IV)).  In this case, each of those factors is present.

Other courts have found, "[w]here the [alleged infringer's] contacts with the forum are minor, the factor of access to [alleged infringer's] records weighs more heavily in the balance, leading to a transfer to [alleged infringer's] home base."  *See* McCarthy, *supra* at § 32:73 (citing *Jockey International, Inc. v. Burkard*, 182 U.S.P.Q. 126, 128 (N.D. Ill 1974) (attached hereto as Ex. V); *Durango Cookery, Inc. v. Columbia Industries Corp.*, 230 U.S.P.Q. 139, 141 (N.D. Ill. 1985) (attached hereto as Ex. VI); *Premier Herbs, Inc. v. Nature's Way Prods., Inc.*, 689 F.

Supp. 180, 186 (S.D.N.Y. 1988); *Nylok Fastener Corp. v. Oakland Corp.*, 12 U.S.P.Q.2d 1896,

1898 (N.D. Ill. 1989) (attached hereto as Ex. VII); *International Comfort Prods., Inc. v. Hanover*

*House Indus., Inc.*, 739 F. Supp. 503, 506 (D. Ariz. 1989)).  In this case, Personified's limited

activity in North Carolina further favors transfer of this action to Illinois.

    In this case, the alleged infringers, the relevant business records and witnesses and the

primary counsel for both parties are all located in Chicago.  Accordingly, transfer of the case to

Illinois is appropriate even if the Court denies CareerBuilder and Personified's motion to dismiss

based on the first-filed rule.

## CONCLUSION

    For the foregoing reasons, the Court should either dismiss this case or transfer it to the

United States District Court for the Northern District of Illinois.

    Respectfully submitted this the 10th day of July, 2008.

<div style="margin-left: 40%">

/s/ Andrew T. Tripp

Andrew T. Tripp
N.C. Bar. No. 34254
E-mail: atripp@brookspierce.com
BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD, L.L.P.
P.O. Box 1800
Raleigh, NC 27602
Telephone: 919-839-0300
Facsimile: 919-839-0304

OF COUNSEL:
Matthew W. Walch
Christopher R. Freeman
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606
Telephone:  (312) 876-7700
Facsimile:   (312) 993-9767

*Attorneys for Defendants Personified, LLC and*
*CareerBuilder, LLC*

</div>